IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANITA K. CAMERON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 3984 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff Anita K. Cameron ("Plaintiff") appeals the Commissioner of Social Security's decision to deny her Supplemental Security Income benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We grant Plaintiff's motion for summary judgment [dkt. 14] and deny the Commissioner's motion for summary judgment [dkt. 22]. The Administrative Law Judge's decision is remanded.

### STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act.[1] A motion for summary judgment has been filed on behalf of Plaintiff Anita K. Cameron. A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion [dkt. 14] and deny the Commissioner's motion [dkt. 22]. The Administrative Law Judge's ("ALJ") decision is remanded.

Plaintiff was diagnosed with multiple sclerosis ("MS") in April of 1990.[2] She worked as

---

[1] *See* 42 U.S.C. §§ 405(g), 216(i), 223(d), 1614(a)(3)(A).
[2] R. at 44.

1

an executive secretary from October 1996 until October 27, 2007, which is also her alleged onset date for disability.[3] Plaintiff stated in her disability report that on that day, October 27, 2007, her disability became severe enough to permanently impair her ability to work.[4] She further noted that she stopped working because she was one of many employees laid off by the bank for which she worked at the time.[5] Plaintiff testified she was having difficulties getting to work at the time she was laid off because of her medical condition causing her to take a long time to get ready in the morning.[6]

Plaintiff had been seeing her treating physician, Dr. Shehla Siddiqi, M.D., since 1990.[7] During an appointment on December 21, 2010, Dr. Siddiqi stated that Plaintiff's MS was stable.[8] On May 23, 2011, Dr. Siddiqui indicated that Plaintiff had no complaints of new weakness in her extremities or vision problems, and that Plaintiff specified that she spent most of her time at home doing chores since she was retired.[9] On August 13, 2010, Plaintiff's treating neurologist, Dr. Susan Vaughn, noted that Plaintiff has been doing well besides having MS associated fatigue.[10]

On March 11, 2011, Dr. Charles Carlton, M.D., reviewed Plaintiff's medical history and performed a consultative examination of Plaintiff on behalf of the Bureau of Disability Determination Services.[11] He noted that Plaintiff was independent with activities of daily living, and that she had a painless range of full motion in all joints, except the hips.[12] On April 7, 2011, state agency consultant Dr. Charles Wabner completed a medical consultative evaluation.[13] He

---

[3] R. at 30, 98, 271.
[4] R. at 217
[5] R. at 25.
[6] *Id.*
[7] R. at 263.
[8] R. at 322.
[9] R. at 315.
[10] R. at 279.
[11] R. at 303.
[12] R. at 304-305.
[13] R. at 302.

opined that Plaintiff was partially credible because Plaintiff had no difficulty seeing, using her hands, standing or walking, despite her allegations of carpal tunnel syndrome and glaucoma.[14] Dr. Wabner also reported that Plaintiff could sit about six hours in an eight hour workday, and walk or stand at least two hours.[15]

On December 20, 2010, Plaintiff filed applications under Title II and Title XVI for disability insurance benefits and supplemental security income.[16] On April 12, 2011, the Social Security Administration denied Plaintiff's applications.[17] On July 6, 2011, the administration denied her applications upon reconsideration.[18] On August 3, 2011, Plaintiff requested a hearing with an Administrative Law Judge ("ALJ").[19]

On May 31, 2012, ALJ Marlene R. Abrams held a hearing, and the following individuals testified: Plaintiff, Dr. Hilda Martin, M.D., a medical expert in the case, and Jill Radke, the vocational expert.[20] Plaintiff testified about the duties of her past job as a senior investment assistant, which consisted of secretarial duties, contacting people, and collecting information.[21] She then explained that she could no longer work because she had difficulty doing basic things such as getting dressed, showering, driving, and walking because of exhaustion.[22] Plaintiff testified that she was capable of brushing her teeth, washing her face, and other personal care chores, but was not able to do those things well enough in order to get to work.[23] Her main complaint was being tired from not sleeping well.[24] Plaintiff also stated that because she had her

---

[14] *Id.*
[15] R. at 296.
[16] R. at 98.
[17] *Id.*
[18] *Id.*
[19] R. at 137.
[20] R. at 18, 20.
[21] R. at 32.
[22] R. at 35.
[23] R. at 45-46.
[24] R. at 47.

disease for so long she learned how to live with her limitations.[25] However, she stated that she always had problems with her memory, with some causation attributable to her age, and some to her MS.[26] Plaintiff mentioned that she had been having problems paying her bills from the right account or forgetting to pay them entirely.[27] Plaintiff further verified that after being laid off she had applied for work similar to what she had been doing at her past job.[28] Her reasons for not gaining new employment were that she was not willing to drive ninety minutes to the suburbs, and that someone else had been hired in the downtown job to which she had applied.[29]

Dr. Martin then testified that she reviewed the entire record, and heard Plaintiff testify at the hearing.[30] She stated that Plaintiff's medically determinable impairment was multiple sclerosis, and that Plaintiff had other issues that were not severe.[31] Based on that impairment and Plaintiff's allegations of fatigue, Dr. Martin testified that Plaintiff should be limited in her work activity to lifting no more than twenty pounds, but only occasionally, stand and walk two hours in an eight hour day, and that Plaintiff needed to work in a temperature controlled environment.[32] Dr. Martin further noted that while Plaintiff complained of hand and finger problems, there was no medical evidence upon which Dr. Martin could recommend a restriction in work activity in that regard.[33]

The ALJ then gave the vocational expert a hypothetical that included Dr. Martin's work limitations, and asked if such a person could perform Plaintiff's past job as a senior investment

---

[25] R. at 77.
[26] R. at 68.
[27] R. at 68.
[28] R. at 27.
[29] R. at 28-29.
[30] R. at 68-69.
[31] R. at 69.
[32] R. at 82-84.
[33] R. at 83.

assistant.[34] The vocational expert testified that someone with the claimant's age, education and work experience could perform her past job as classified, as it is a skilled sedentary job.[35] The vocational expert also stated that Plaintiff had transferrable skills from her past job such as data entry skills, banking skills, customer service, and general office functions.[36] The ALJ then gave the vocational expert another hypothetical asking what jobs those skills could transfer to that fit within the parameters provided in the first hypothetical.[37] The vocational expert testified the jobs to which the skills transferred included general office clerk, receptionist, and order clerk, all of which are sedentary jobs with plenty available in the national economy.[38] She also noted that if an individual was late or absent from work three or more times per month that person would be unlikely to retain the job.[39]

In the ALJ's findings after the hearing, she determined that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible.[40] She explained her finding was because of the discrepancy between Plaintiff's allegations and medical records.[41] The ALJ listed several instances from the medical records, noting that Plaintiff generally only mentioned complaints of muscle stiffness, "on and off fatigue," and that she had not reported any side effects with her current medication.[42] Specifically, the ALJ referred to a December 2011 visit to Dr. Siddiqi in which the doctor noted that Plaintiff was fully functional in all of her daily activities.[43]

---

[34] R. at 86-87.
[35] R. at 87-88.
[36] R. at 88.
[37] *Id*.
[38] R. at 88-89.
[39] R. at 89.
[40] R. at 102.
[41] R. at 103.
[42] *Id*.
[43] R. at 104.

The ALJ also based her credibility finding on the fact that Plaintiff reported that she primarily stopped working because she was laid off, and had looked for work until 2009.[44] The ALJ did note that Plaintiff's receipt of unemployment benefits was relevant to a credibility determination because the reason Plaintiff stopped working was not primarily due to her disability.[45] The ALJ also referenced Plaintiff's testimony that she had sought employment with various employers for the position of executive assistant, the same position as her past job, after having been laid off.[46]

In assessing both credibility and residual functional capacity, the ALJ gave great weight to Dr. Martin's medical testimony, and relied on consulting physicians, Dr. Carlton and Dr. Wabner.[47] The ALJ listed Plaintiff's skills from her past job, which included data entry and basic bookkeeping, and stated that they were transferrable.[48] The ALJ alternatively stated that given Plaintiff had acquired skills from her past relevant work that were transferrable, there were other jobs Plaintiff could perform in the national economy.[49]

On March 13, 2013, the ALJ found that: (1) Plaintiff met the insured status requirements; (2) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 27, 2007; (3) Plaintiff had the severe impairment multiple sclerosis; (4) Plaintiff did not have a severe impairment or combination of impairments that met the requirements of a listing; (5) Plaintiff had the residual functional capacity to perform light work except she could only stand/walk for two hours in an eight hour day, occasionally balance or crouch, could tolerate only moderate heat or cold exposure, and must work in a humidity-controlled environment; and (6)

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] R. at 107-108.
[48] R. at 109.
[49] *Id.*

Plaintiff was capable of performing past relevant work, or in the alternative, Plaintiff hasd transferrable skills that could be used in other occupations available in great numbers in the national economy.[50]

On March 31, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's determinations.[51] The decision of the ALJ became the final decision of the Commissioner of Social Security in the case.[52] Plaintiff then brought this action for appeal under 42 U.S.C. §405(g).

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[53] if it is supported by substantial evidence, and if it is free of legal error.[54] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[55] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[56] A "minimal[] articulat[ion] of her justification" is enough.[57]

### II. THE ALJ DID NOT PROPERLY DETERMINE WHETHER PLAINTIFF COULD PERFORM HER PAST RELEVANT WORK

Plaintiff challenges the ALJ's step four determination that she could perform her past relevant work.[58] The Commissioner concedes that the ALJ failed to adequately assess the

---

[50] R. at 100-111.
[51] R. at 1.
[52] *Id.*
[53] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[54] 42 U.S.C. § 405(g).
[55] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[56] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[57] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[58] Dkt. 14, at 7-10.

7

requirements and demands of Plaintiff's past relevant work.[59] The ALJ must compare the actual physical and mental demands of Plaintiff's past work with her current capacity in order to determine her capability to perform the job.[60] If the ALJ determines that Plaintiff is capable of performing her past work as she performed the job, Plaintiff is not disabled.[61] Alternatively, the ALJ can assess whether Plaintiff could perform her past relevant work as generally required by employers nationally, if how Plaintiff actually performed the job was at a higher exertional level than as it is nationally performed.[62]

An ALJ must find that a Plaintiff can perform her past relevant work by actually making a comparison in her findings between Plaintiff's current ability and, either, how she performed her past job, or how it is generally performed nationally.[63] Here, the ALJ failed to discuss the actual physical and mental demands of Plaintiff's past work in her opinion. Instead, the ALJ only noted in her findings that the vocational expert testified that Plaintiff's past relevant work as a senior investment assistant included skills such as data entry, basic bookkeeping, customer service and typical office computer program use.[64] Although the ALJ questioned the Plaintiff at the hearing as to the demands of her past job,[65] she failed to adequately address these demands in her written decision.[66] The ALJ's boilerplate statement in her decision that she compared the physical and mental demands with Plaintiff's RFC does not equate to a finding of the actual demands of the job or whether Plaintiff could perform it. The ALJ did not fully address in her findings what was actually required of Plaintiff in her past work, nor did she make a comparison

---

[59] Dkt. 22, at 6-7.
[60] 20 C.F.R. § 404.1520(e); *Steward v. Bowen*, 858 F.2d. 1295, 1299-1300 (7th Cir. 1988); *Strittmatter v. Schweiker*, 729 F.2d. 507, 509 (7th Cir. 1984).
[61] *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).
[62] 20 C.F.R. § 404.1560(b)(2); *Steward*, 858 F.2d. at 1300.
[63] *Smith*, 388 F.3d at 253.
[64] R. at 109.
[65] R. at 32-33.
[66] R. at 109.

between the requirements of Plaintiff's past work and her current capability. It is not the court's job to reweigh the evidence, but to evaluate the ALJ's actual findings.[67] Therefore, the ALJ's determination of Plaintiff's ability to perform her past relevant work was not adequate as she did not make an actual finding as to the actual and physical demands of the job.

### III. THE ALJ DID NOT PROPERLY DETERMINE WHAT TRANSFERRABLE SKILLS PLAINTIFF ACTUALLY ACQUIRED FROM HER PAST WORK

The Commissioner argues the ALJ's failure to adequately assess Plaintiff's ability to perform her past relevant work was harmless error because the ALJ found the existence of other jobs in the national economy that Plaintiff could perform.[68] Plaintiff argues that the ALJ's alternative determination that there existed a significant number of jobs in the national economy that she could perform based on her residual functional capacity and vocational factors was incorrect.[69]

If the ALJ determines Plaintiff cannot perform her past relevant work, the same RFC is used along with Plaintiff's vocational background to assess if there are other jobs in the national economy that Plaintiff could perform.[70] The ALJ needs to identify skills Plaintiff actually acquired in her past work, determine whether they are transferrable, and identify other jobs to which they can transfer.[71] A person is considered "to have skills that can be used in other jobs, when the skilled or semi-skilled work activities [he or she] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."[72] An

---

[67] *Moore*, 743 F.3d at 1121.
[68] Dkt. 22, at 6-7.
[69] Dkt. 14, at 7-10.
[70] 20 C.F.R. § 404.1520(e)-(g); *Smith*, 388 F.3d at 252.
[71] 20 C.F.R. § 404.1568(d)(1); *Harris*, 646 F. Supp. 2d at 998.
[72] 20 C.F.R. § 404.1568(d)(1).

ALJ is not required to explain how the skills are transferrable, but must still make a finding as to what skills were actually acquired by Plaintiff while performing her past work.[73]

In her findings, the ALJ restated the vocational expert's testimony that Plaintiff's past relevant work was skilled with a specific vocational preparation code of 7, and required skills such as data entry and basic bookkeeping.[74] However, the ALJ herself never made a finding in her decision as to whether Plaintiff had actually acquired those skills, or merely assumed Plaintiff had acquired the skill's listed by the vocational expert. The ALJ only made a conclusory statement without any analysis as to whether Plaintiff had actually acquired the skills generally acquired in her past relevant work. While the ALJ may rely on a vocational expert, "the transferability of skills is a determination entrusted to the ALJ, not the [vocational expert]; we review the actual reasons given by the ALJ without speculating about what the ALJ might have considered."[75] The ALJ never addressed in her opinion, nor is it clear from the hearing testimony, whether she assessed if Plaintiff actually acquired those skills that the vocational expert deemed transferrable.[76] Although the record reveals that the ALJ questioned Plaintiff as to the demands of her past job, the court will not presume that the ALJ properly assessed Plaintiff's acquired skills absent an actual finding made by the ALJ in her decision. The ALJ's transferability determination was therefore legal error and requires remand.

## CONCLUSION

For the foregoing reasons, we remand this matter. Plaintiff's motion for summary judgment is granted [dkt. 14] and the Commissioner's motion for summary judgment is hereby

---

[73] *Key v. Sullivan*, 925 F.2d. 1056. 1062 (7th Cir. 1991).
[74] R. at 109.
[75] *Abbott v. Astrue*, 391 Fed. App'x 554, 558 (7th Cir. 2010) (internal citations omitted).
[76] *Harris*, 646 F. Supp. 2d at 998.

denied [dkt. 22].

**ENTER:**

**DATED:** 8/6/2015

_____

United States Magistrate Judge
Susan E. Cox